

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2007

# Andoko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Andoko v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1618.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1618

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-5085

BUDIONO ANDOKO,
Petitioner

v.

ATTORNEY GENERAL USA,
Respondent

On Petition for Review of a Final Decision of the
Board of Immigration Appeals
BIA No. A96-204-335
Immigration Judge: Charles M. Honeyman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 12, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND, *District Judge**

(FILED: February 15, 2007)

OPINION

---

*The Honorable Gustave Diamond, Senior District Judge for the Western District
of Pennsylvania, sitting by designation.

SMITH, *Circuit Judge*.

Budiono Andoko, a citizen and native of Indonesia, petitions for review of the decision by the Board of Immigration Appeals (BIA) dismissing his appeal of the Immigration Judge's denial of his application for withholding of removal, and relief under the Convention Against Torture (CAT).[1] For the reasons set forth below, we will deny the petition for review.

Andoko entered the United States in November 2000 as a business visitor and overstayed his visa. In July 2003, he was served with a notice to appear, charging that he was removable for staying longer than permitted in violation of 8 U.S.C. § 1237(a)(1)(B). In response, Andoko filed an application for asylum, withholding of removal, and relief under the CAT. He alleged that he had suffered persecution in his native Indonesia because of his Chinese ancestry and his Christian faith. In an affidavit attached to his application, Andoko related that he had been persecuted since childhood because of his ethnicity. He described generally how Chinese Indonesians were discriminated against and he cited the

---

[1] The IJ found that Andoko's asylum application was time-barred under 8 U.S.C. § 1158(a)(2)(B), and that that he failed to demonstrate changed circumstances warranting an exception to the one year time period, 8 U.S.C. § 1158(a)(2)(C). Section 1158(a)(3) precludes judicial review of any determination made regarding the timeliness of an asylum application. Andoko wisely does not seek review of the IJ's determination that his asylum application was untimely. *See Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006).

2

1998 riots, which destroyed his brother's store. Andoko also described how in May of 1999 he was assaulted while on his motorcycle by several persons who were drunk and who used anti-Chinese epithets. He sustained a broken leg as a result of the incident and was hospitalized.

During the hearing before the Immigration Judge (IJ), Andoko testified that he decided to leave Indonesia in November 2000 because he had been traumatized by the May 1999 assault. He explained that he "wanted to live in America" because it was "safe and also comfortable." When asked what would happen if he were repatriated to Indonesia, Andoko voiced his desire to stay in America as it would not be safe to return to Indonesia.

The IJ found that Andoko's asylum application was untimely. The IJ went on to deny Andoko's request for asylum on the merits, ruling that the assault he described did not rise to persecution. In addition, the IJ explained that there were no facts to suggest that Andoko would be persecuted in the future, and that the evidence did not demonstrate a pattern or practice of persecution against ethnic Chinese Christians. Because the burden to establish a right to withholding of removal is more stringent than the burden applicable to asylum, the IJ also denied Andoko's withholding of removal claim. Inasmuch as the evidence failed to demonstrate that it was more likely than not that Andoko would be tortured if he

were repatriated to Indonesia, the IJ also denied Andoko's request for relief under the CAT.

Andoko appealed the IJ's decision to the BIA. The BIA adopted and affirmed the decision of the IJ, specifically noting that it agreed that Andoko's asylum application was time-barred and that Andoko had failed to meet his burden of proof with respect to his requests for both withholding of removal and relief under the CAT.

This timely petition for review followed.[2] Andoko asserts that the IJ erred by finding that he did not meet his burden with respect to his claims for withholding of removal and for relief under the CAT.

Because the BIA adopted the IJ's decision and discussed certain aspects of it, we review the decisions of both the IJ and the BIA. *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). The Immigration and Nationality Act provides that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). As we observed in *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc), this provision requires that we review to determine if the findings are supported by

---

[2]The IJ had jurisdiction pursuant to 8 C.F.R. § 1208.2(b). The BIA exercised appellate jurisdiction under 8 C.F.R. § 1003.1(b). We possess jurisdiction under 8 U.S.C. § 1252(a).

substantial evidence.

Withholding of removal is required "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). To obtain relief under this provision, an alien must establish by a "clear probability" that his life or freedom would be threatened in the proposed country of deportation. *INS v. Stevic*, 467 U.S. 407, 413 (1984). This "requires that an application [for withholding of deportation] be supported by evidence establishing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds." *Id.* at 429. This standard is more demanding than the standard required to show a well-founded fear of persecution to obtain a discretionary grant of asylum. *Balasubramanrim v. INS*, 143 F.3d 157, 161 n.8 (3d Cir. 1998) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987)); *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir. 1997).

After conducting a thorough review of the record, we conclude that there is substantial evidence to support the IJ's findings that Andoko was not persecuted. The assault he sustained in May of 1999, though no doubt painful, did not constitute a threat to his life or freedom. *See Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993). Nor do we find evidence in this record which would compel the

conclusion that there was a pattern or practice in Indonesia of persecuting ethnic Chinese Christians. Accordingly, we will not disturb the BIA's denial of Andoko's request for withholding of removal.

Andoko also presses his application for relief under the CAT. We are mindful of the definition of torture in the regulations, see 8 C.F.R. § 208.18(a)(1), and the fact that the regulations instruct that "[t]orture is an extreme form of cruel and inhuman treatment. . . ." 8 C.F.R. § 208.16(c)(3)(1). We find nothing in this record that compels the conclusion that Andoko would likely be tortured if he were repatriated to Indonesia.

We will deny Andoko's petition for review.